UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH MUSILLI, and
WALTER BAUMGARDNER,

       Petitioners,                        Case No. 10-10720
                                                 HON. GEORGE CARAM STEEH

vs.


THE GOOGASIAN FIRM, P.C. and
BARBARA DROOMERS, Personal
Representative of the Estate of WARREN
DROOMERS,

       Respondents.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

### I. INTRODUCTION

This 28 U.S.C. § 2254 action seeking a writ of habeas corpus is brought by petitioners, Ralph Musilli and Walter Baumgardner, Jr., both lawyers who were previously shareholders in the law firm of Musilli, Baumgardner, Wagner & Parnell ("MBWP"). Petitioners claim that they were denied their Sixth and Fourteenth Amendment rights to the United States Constitution when a state trial court found them in criminal contempt, entered judgment in the amount of $431,350.00, assessed fines in the amount of $16,872.00 and ordered them to serve thirty days in jail. Petitioners seek "[i]mmediate relief from the judgment for damages, fines and imprisonment" and "expungement of the

-1-

convictions." Pet. at 5.

On April 23, 2010, respondents, the Googasian Law Firm and Barbara Droomers, personal representative of the estate of Warren Droomers, filed a motion to dismiss or for summary judgment. To date, petitioners have failed to file a response. For the reasons set forth below, the court will grant respondents' motion and dismiss petitioners' petition for a writ of habeas corpus.

## II. FACTUAL BACKGROUND

This case arises out of incidents beginning roughly ten years ago. Respondent Barbara Droomers' decedent, Warren Droomers, was a lawyer who referred a personal injury case to MBWP. Sometime in 1999, the case settled and MBWP received over $1,000,000.00 in contingency fees. In 2000, Droomers filed a complaint in the Oakland County Circuit Court in Pontiac, Michigan alleging that MBWP breached a contract by failing to remit his referral fee totaling $352,636.60.[1] Droomers filed a first amended complaint in August of 2002 adding a separate claim under the theory of quantum meruit. Droomers also filed a motion for relief under Michigan's Uniform Fraudulent Transfer Act ("UFTA"), MICH. COMP. LAWS § 566.31 *et seq.*, alleging the MBWP violated the UFTA by failing to set aside the $ 352,636.00 after receiving payment of the contingency fee. Instead MBWP transferred the money to its shareholders, which made it difficult or impossible for Droomers to collect on his claim. On December 20, 2002, the trial court ordered MBWP to deposit $ 352,636.00 into escrow and refrain from "transferring any firm

---

[1] Droomers died during the pendency of the state case, and the trial court ordered a party substitution so that plaintiff became Barbara Droomers, as representative for the estate of Warren Droomers.

assets out of the corporation until the $ 352,636.00 is paid into escrow[.]" MBWP never escrowed the funds, instead it transferred funds to its shareholders, including approximately $97,000.00 to Musilli and Baumgardner, petitioners in this matter, and a third partner, John Parnell.[2]

After a bench trial ending in May 2003, the trial court found in favor of MBWP on Droomers' breach of contract claim, but found in favor of Droomers on his claim based on *quantum meruit*. The trial court awarded $240,000.00 plus costs and interest, for a total amount of $312,297.00. On October 10, 2003, Droomers moved for an order requiring Parnell, Muselli and Baumgardner to appear and show cause why they had not made the $352,636.00 deposit into escrow as ordered on December 20, 2002. On December 4, 2003, the trial court found Parnell, Muselli and Baumgardner in contempt for their failure to abide by the court's December 20, 2002 order and ordered them to appear on December 17, 2003 for a show cause hearing and a determination of fines and damages caused by their contempt.

At the show cause hearing, which actually occurred on December 16, 2003, the trial court reaffirmed its finding of contempt, concluding that Parnell, Muselli and Baumgardner had "flagrantly violated" the court's December 20, 2002 order, which bound both MBWP and its individual shareholders. Later that day, the court filed a written order, sentencing

---

[2] Mr. Parnell was a defendant in the state court action, however he later reached a settlement agreement with respondent Barbara Droomers, the contents of which have remained undisclosed to petitioners. Petitioners argue that should this court require an evidentiary hearing, the court should "[o]rder, at least for *in camera* inspection, the settlement document between this third individual, Parnell, and the plaintiffs, as the resolution goes to the issue of not only mitigation of damages, but set-off and contempt resolution issues." Pet. at 2, n.3.

Parnell, Muselli and Baumgardner to thirty (30) days in jail. MBWP filed for bankruptcy the same day of the show cause hearing, later liquidated its assets, and changed its named to Shores Legal Services.

On appeal, the Michigan Court of Appeals affirmed the contempt order, but remanded the matter to the trial court "for clarification regarding whether the trial court meant to impose sanctions for criminal or civil contempt." *See Droomers v. Parnell,* no. 253455, 2005 Mich. App. LEXIS 1589, *1 (June 30, 2005). On remand the trial court issued a ruling of criminal contempt and entered judgment against Musilli and Baumgardner in the amount of $431,350.00 plus costs and fees totaling $16,872.00. The trial court further ordered Musilli and Baumbardner to serve their thirty (30) day sentences, to begin on February 1, 2006.

Subsequently, the parties engaged in settlement discussions, and the trial court entered a stay of the sentence. On February 28, 2006, the parties reached a settlement agreement. Droomers agreed to have the trial court dismiss the criminal contempt charge, and dismiss the lawsuit in exchange for Musilli's and Baumgarnder's promise to each pay $100,000.00 to Droomers' estate. The parties agreed that the trial court's criminal contempt judgment would be reinstated if the $100,000.00 payments were not timely made. Pursuant to the agreement the trial court vacated the criminal contempt judgment.

While Droomers performed her obligation under the agreement, Musilli and Baumgardner did not, opting instead to file suit in the United States District Court for the Eastern District of Michigan alleging "extortion" and a claim under 42 U.S.C. § 1983 against Droomers and the state court trial judge. On October 23, 2006, the federal district court dismissed the lawsuit and imposed Rule 11 sanctions due to plaintiffs failure to agree to

dismiss the complaint, despite "the obvious application of the *Rooker-Feldman* doctrine." *See* case no. 06-11992, dkt. no. 24 at 11.

Musilli filed for bankruptcy on or about October 31, 2006 and Baumgardner likewise did so on December 11, 2006. On May 1, 2007, Bankruptcy Judge Steven Rhodes lifted the automatic bankruptcy stay to allow the reopening of the state criminal contempt proceedings against Musilli and Baumgardner. The state trial court reinstated its findings of criminal contempt on June 29, 2007, and again on April 16, 2008, reaffirming the money judgment against Musilli and Baumgardner. Musilli and Baumgarder served three days of their thirty (30) day sentence. They were released on July 1, 2007. [3]

In a December 26, 2007 Opinion, Bankruptcy Judge Rhodes agreed with Droomers' claim that the state court money judgment was nondischargeable under § 11 U.S.C. § 523(a)(6) because Musilli and Baumgardner committed "wilful and malicious injury" to Droomers. Alternatively, the Bankruptcy Judge ruled that discharge of the judgment debt should be denied because Musilli and Baumgardner "transferred and concealed assets within one year before Shores Legal Services filed for bankruptcy protection in 2003, all with the intent to hinder, delay, or defraud Droomers" in violation of 11 U.S.C. § 727(a)(7).

Musilli and Baumgardner appealed the bankruptcy court's ruling to this court. On

---

[3] Musilli and Baumgardner appealed the state trial court's reinstatement of the criminal contempt judgment requiring them to pay $431,350.00, plus $16,872.00 in costs and fees. On February 12, 2009, the Michigan court of appeals affirmed the decision of the trial court reinstating the criminal contempt judgment and remanded for a recalculation of statutory interest and entry of judgment incorporating the recalculated interest amount. *Droomers v. Parnell*, No. 278162, 2009 Mich. App. LEXIS 310 (Mich. Ct. App., Feb. 12, 2009). On September 28, 2009, the Michigan Supreme Court denied leave to appeal the Michigan Court of Appeals February 12, 2009 decision in a form order, "because we are not persuaded that the questions presented should be reviewed by this Court." *Droomers v. Parnell*, 485 Mich. 895; 772 N.W. 2d 422 (2009).

November 25, 2008, this court affirmed the Bankruptcy Court's decision. *In re Musilli*, 398 B.R. 447(E.D. Mich. 2008). On June 3, 2010, the Sixth Circuit Court of Appeals affirmed the bankruptcy court's finding of nondischargeability of debt pursuant to § 523(a)(6) and remanded the matter for further proceedings. Specifically, the Sixth Circuit held that:

> Despite having clear instructions from the court that the firm was to escrow funds sufficient to cover a judgment against it, Musilli and Baumgardner transferred all of the firm's assest's away from the firm, including transferring a significant amount of money to themselves. The appellants directly violated the court order and have offered no legitimate justification that might explain why their actions were not willful and malicious.

*Musilli v. Droomers (In re Musilli)*, No. 08-2572, 2010 U.S. App. LEXIS 11379 (6th Cir. June 3, 2010).

### III. ANALYSIS

Respondents argue that the instant petition for a writ of habeas corpus is nothing more than petitioners latest attempt to avoid compliance with the state trial court's order. Petitioners have failed to respond to respondents' present motion, further supporting the conclusion that this latest proceeding represents petitioners last ditch effort to defy the orders of the state court.

The gist of respondents' argument is that petitioners' petition for a writ of habeas corpus should be denied on the basis that this court lacks subject matter jurisdiction because petitioners are not in custody. To invoke a federal district court's jurisdiction to review a petition for a writ of habeas corpus, a petitioner must be "a person in custody pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Rule 1 of the Rules Governing Section 2254 Cases states:

> (a) Cases involving a petition under 28 U.S.C. § 2254. These rules govern a petition for a writ of habeas corpus filed in a United States district court under 28 U.S.C. § 2254 by:
> (1) a *person in custody* under a state-court judgment who seeks a determination that the custody violates the Constitution, laws, or treaties of the United States; and
> (2) a *person in custody* under a state-court or federal-court judgment who seeks a determination that future custody under a state-court judgment would violate the Constitution, laws, or treaties of the United States.

*See* Rule 1 of the Rules Governing Habeas Corpus Cases Under Section 2254 (emphasis added), *see also*, *Maleng v. Cook*, 490 U.S. 488, 490 (1989) ("The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are *in custody* in violation of the Constitution or laws or treaties of the United States.") *Id.* (internal quotations omitted). Custody is determined from the date that the petition for the writ of habeas corpus is filed. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

Historically, the federal courts required the petitioner to be presently confined at the time the habeas corpus petition was adjudicated to be considered "in custody" for purposes of federal habeas corpus review. *See Parker v. Ellis*, 362 U.S. 574 (1960) (Supreme Court dismissed petition for lack of jurisdiction because the matter became moot once the petitioner completed his sentence and was released from prison). The definition of "in custody" has since expanded; now it is not a requirement that the petitioner be physically incarcerated at the time his petition is adjudicated, or even at the time he files his petition. For instance, a district court may not dismiss a petition for a writ of habeas corpus as moot based on the fact that a petitioner is on parole. *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). In *Jones,* the Supreme Court held that the:

> [R]estraints [imposed while on parole] are enough to invoke the Great Writ.

> Of course, that writ always could and still can reach behind prison walls and iron bars. But it can do more. It is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose -- the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. While petitioner's parole released him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' ... within the meaning of the habeas corpus statute....

*Id*. Similarly, a petitioner who is not currently incarcerated, but serving a term of probation at the time of filing a petition for the writ of habeas corpus meets the "in custody" requirement. *See McVeigh v. Smith*, 872 F. 2d 725, 727 (6th Cir. 1989); *see also, Lawrence v. 48th Dist. Ct.*, 560 F. 3d 475, 480-81 (6th Cir. 2009) ("Probation's restraints on liberty suffice to satisfy the 'in custody' requirement.") A petitioner who has been released on personal recognizance at the time of filing a habeas corpus petition is considered to be 'in custody' within the meaning of § 2254. *See McVeigh*, 872 F. 2d at 727 (at the time of filing for habeas corpus relief, petitioner's one year probationary period was stayed, and she was granted a recognizance bond).

The theory behind the modern view of the "in custody" requirement is that individuals who are on parole, probation, or out on bail are "subject to restraints not shared by the public generally." *Hensley v. Municipal Court, San Jose-Milpitas Judicial Dist*. 411 U.S. 345, 351 (1973). In concluding that the restraints imposed upon a petitioner released on his own recognizance satisfies the 'in custody' requirement of the federal habeas corpus statute, the *Hensley* court explained:

> First, he is subject to restraints not shared by the public generally, that is, the obligation to appear at all times and places as ordered by any court or magistrate of competent jurisdiction. He cannot come and go as he pleases. His freedom of movement rests in the hands of judicial officers, who may demand his presence at any time without a moment's notice. Disobedience is itself a criminal offense.

*Id.* (internal quotations and citations omitted). In so concluding, the *Hensley* court relied on the principle that "habeas corpus is an extraordinary remedy[,] . . . its use has been limited to cases of special urgency." *Id.* The *Hensley* court concluded that while the petitioner's one year jail sentence had been stayed, and he had been released on his own recognizance, these facts nonetheless fell within the custody requirement because of the certainty of his incarceration. *Id.* at 351-53. The *Hensley* court held that "[h]is incarceration is not, in other words, a speculative possibility that depends on a number of contingencies over which he has no control." *Id.* at 352. Therefore, a petition for a writ of habeas corpus remains justiciable if, at the time, the petition is filed, the petitioner is subject to some type of restraint. *Jones*, 371 U.S. at 243; *Carafas v. LaVallee, 391 U.S. 234, 238 (1963).*

Petitioners cannot invoke this court's jurisdiction as they were not "in custody" at the time they initiated this action. Petitioners were released from the Oakland County Jail on July 1, 2007, approximately a year and a half before they filed for habeas corpus relief. Further, petitioners were not on parole or probation on July 1, 2007. Petitioners have asserted no argument suggesting that their failure to pay the state court's judgment exposes them to an additional term of incarceration. Even if petitioners could establish that the state trial court is inclined to impose another jail sentence should petitioners fail to pay the state court judgment, this possible outcome is not enough to invoke the court's habeas corpus jurisdiction.

"The custody requirement serves to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Tinder v. Sister Rose Paula*, 725 F. 2d 801, 803 (1st Cir. 1984). Relying on the principles espoused in *Hensley*, *supra*, specifically that the writ of habeas corpus is limited to cases where the restraints are immediate and severe,

several courts have concluded that the "in custody" requirement is not present in fine only sentences even though a failure to pay the fine could result in incarceration. *See Spring v. Caldwell*, 692 F. 2d 994, 998 (9th Cir. 1982). The *Spring* court held that the possibility of incarceration was not an imminent threat which the petitioner had no control to prevent. *Id.* at 998. If the petitioner paid the fine, he would not face a jail sentence. *Id*; *see also, Duvallon v. Florida*, 691 F. 2d 483, 485 (11th Cir. 1982) (existence of the possibility that appellant will be found in contempt and incarcerated for her failure to pay a fine does not meet the "in custody" requirement for purposes of federal habeas corpus jurisdiction).

The Sixth Circuit Court of Appeals' decision in *Lawrence v. 48th Dist. Ct.*, 560 F. 3d 475 (6th Cir. 2009) supports this court's conclusion that it lacks jurisdiction to resolve petitioners' habeas corpus petition because petitioners are not "in custody" under § 2254(a). In *Lawrence*, the petitioner was convicted of interference with a police officer in the discharge of his duties. *Id.* at 476. Prior to his recusal, the state trial judge sentenced the petitioner to twelve (12) months of non-reporting probation plus five hundred (500) hours of community service. *Id.* at 478. The state trial judge who was subsequently assigned to the case released petitioner on personal bond pending resolution of his appeal. *Id.* at 478. This judge later gave petitioner a monetary penalty only. *Id.*[4] Prior to the imposition of the monetary penalty only sentence, the petitioner filed a petition for a writ of habeas corpus. *Id.* The *Lawrence* court concluded since petitioner could be ordered by the state court for sentencing at any time, this was sufficient restraint on his freedom to find that he was "in custody" for purposes of federal habeas corpus review. *Id.* at 481. The fact

---

[4] The record was unclear as to whether the state trial judge vacated the petitioner's original sentence.

that at the time the district court adjudicated the petitioner's petition for a writ of habeas corpus the petitioner was facing only a monetary penalty did not change the outcome on the custody question. Rather, the Sixth Circuit relied on this fact to find that the petitioner's case was not moot because it "preserves [petitioner]'s stake in this case. . . ." *Id.* This is unlike the present matter where petitioners were not incarcerated, serving a term of probation, released on personal recognizance or otherwise subject to restraints on their individual liberty at the time they filed their petition for the writ of habeas corpus.

To the extent that petitioners rely on the fact that the criminal contempt conviction exposes them to sanctions from the State Bar of Michigan, such an argument does not render them "in custody" for purposes of federal habeas corpus jurisdiction. *See Maleng,* 490 U.S. at 492 (collateral consequences of conviction, such as "inability to vote, engage in certain business, hold public office, or serve as a juror" are insufficient to render an individual "in custody" for purposes of invoking federal habeas corpus jurisdiction).[5] Therefore, the court concludes that petitioners are not "in custody" and cannot invoke this court's jurisdiction to review the state court's judgment for damages, fines and imprisonment.

Respondents argue in the alternative that, even if petitioners were in custody at the time they filed their petition, they have named the improper respondent. "There is generally only one proper respondent to a given prisoner's habeas petition." *Rumsfeld* v. Padilla, 542 U.S. 426, 434 (2004). The statute requires "a proceeding against some person who has

---

[5] As the court concludes that subject matter jurisdiction is absent because petitioners are not "in custody," the court will not address respondents' last argument that the *Rooker-Feldman* doctrine applies to the instant matter.

the immediate custody of the party detained, with the power to produce the body of such party before the court or judge . . . ." *Id.* at 435. If petitioners are not "in custody" then there can be no custodian "with the power to produce th[eir] bod[ies]" before this court. However, respondents are correct that if petitioners were currently confined in the Oakland County Jail, the proper respondent would be the Oakland County Sheriff, who is the custodian of the inmates at the Oakland County Jail. In any event, failure to name the proper respondent can usually be cured by an amendment to the petition, rather than denial of the petition outright." Failure to name a proper respondent is a procedural rather than a jurisdictional defect, and it may be corrected by amendment of the petition." *West v. Louisiana*, 478 F. 2d 1026, 1029 (5th Cir. 1973).

Before petitioners may appeal the court's dispositive decision denying their petition for a writ of habeas corpus, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3)(B); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F. 3d 1306, 1307 (6th Cir. 1997). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a petition is dismissed on procedural grounds, the petitioner must demonstrate that jurists of reason would conclude that the district court's dismissal on procedural grounds was debatable or incorrect. *Id.* at 485.

The court finds that jurists of reason would not find debateable or wrong this court's decision that petitioners are not "in custody" under § 2254(a), therefore this court lacks jurisdiction to review petitioner's petition for a writ of habeas corpus. A certificate of appealability shall not issue in this matter.

## IV.  CONCLUSION

Accordingly,

Respondents' motion to dismiss or for summary judgment is GRANTED; the petition for a writ of habeas corpus is DENIED.

This matter is DISMISSED; and a certificate of appealability shall not issue in this matter.

IT IS SO ORDERED.

Dated:  June 24, 2010

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 24, 2010, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk